### 16736

## STATE v. ROBINSON
(75 S. E. (2d) 465)

*Messrs. C. T. Graydon* and *John Grimball,* of Columbia, *for Appellant,*

*Mr. T. Pou Taylor, Solicitor,* of Columbia, *for Respondent.*

April 16, 1953.

BAKER, Chief Justice.

The appellant was tried and convicted at the May (1952) term of the Richland County Court of General Sessions on

an indictment charging that he, with numerous other persons, entered into a conspiracy to defraud the State by the sale, delivery and giving to certain individuals named in the indictment, to wit, Samuel B. Marshall, D. J. Marshall, Benjamin J. Cooper, and others about to take the state teacher's examination in 1949, answers to questions contained in such examination; and from the verdict of guilty and sentence imposed, he appeals.

The machination of the scheme is so fully set forth in *Pettiford v. South Carolina State Board of Education,* 218 S. C. 322, 62 S. E. (2d) 780, it is unnecessary that we again outline same.

There are twenty-two exceptions, but in stating the "Questions Involved," appellant has reduced these to five issues, which will not be taken up in the order stated in his printed brief.

We will first pass upon Question No. IV whether the trial Judge erred in refusing the motion of appellant for a direction of verdict of not guilty, and failing in that, in not granting him a new trial. In that a new trial must be granted the appellant for other reasons, we will refrain from discussing such testimony as is contained in the record which may be said tended to prove the offense alleged in the indictment. Suffice it to say we have read the record and, construing the testimony in the light most favorable to the prosecution, which must be done in passing upon a motion for a direction of verdict, keeping in mind, however, that the defendant is entitled to the benefit of any reasonable doubt thereabout, *State v. Shackelford,* 220 S. C. 519, 68 S. E. (2d) 450, have reached the conclusion that we cannot hold as a matter of law that the trial Judge erred in not granting the motion for the direction of verdict in appellant's behalf.

We will now go back to Questions Nos. II and III, reading respectively as follows:

"Did the Trial Judge err in admitting hearsay testimony for the sole purpose of corroborating one of two contradictory statements made by a prosecuting witness?"

"Did the Trial Judge err in admitting testimony in reply by the State that was not contradictory of any testimony offered by the defense and which was also hearsay testimony?"

The chief witness for the prosecution was Samuel Marshall, who testified that he had been given the key answers to the examination questions by the appellant on the night before the examination was to be held, and had been allowed to use appellant's office and typewriter to make other copies of same, and that later he made additional copies in pencil or pen, and had sold to others who were taking the examination at least two, if not three, of these copies for which he had received one hundred to one hundred and twenty dollars, no part of which was ever paid to the appellant. In fact, the appellant made no charge to him for the copy of the key answers he received from the appellant. During the trial, while the defense was cross-examining this witness (Samuel Marshall), the defense procured from the State's prosecuting officer, the Solicitor, and introduced them in evidence, two written statements, both of which had been made under oath by this witness. These statements were contradictory as to the source from which the witness had procured the key answers. In his first sworn written statement, he had stated that he procured the answers to the examination from a man named Robert Bellinger, who lived in Orangeburg, and in his second sworn written statement, made at a later date, he said he had gotten the answers to the examination from the appellant. After these contradictory statements were introduced in evidence, the prosecution called Robert Bellinger as a witness, and the trial Judge, over the vigorous objections of the appellant's counsel, permitted Bellinger to testify in the minutest details to a conversation between him and the witness Samuel Marshall in Orangeburg, when only the two of them were

present, all for the purpose of showing that he (Bellinger) had at one time agreed for Marshall to say that the answers to the questions were procured from him, and thus bolster the second sworn written statement made by Marshall wherein he claimed to have procured the answers to the examination from the appellant.

In so far as the testimony of Bellinger related to the conversation between him and the witness Marshall was concerned, it was pure hearsay, and inadmissible. There are only two exceptions, so far as we recall at the moment, where what might be termed hearsay testimony, is admissible, and the testimony permitted does not fall in either. For this postulate, citation of authority is unnecessary.

When the appellant was testifying, and in the course of his testimony, he said that while Marshall was being investigated in reference to his (Marshall's) connection with the scheme to defraud the State by furnishing teachers who were taking the examination with answers to the questions, Marshall came to him and told him (appellant) that he (Marshall) had told the Constabulary that he had procured the answers to the examination from a man by the name of Leadbetter who lived in Orangeburg; that Marshall then asked him (appellant is a duly licensed and practicing attorney in Columbia) what to tell them (the Constabulary), and he told him to tell the truth; that he (the appellant) didn't know where Marshall had procured the answers.

The State, under the guise of putting up reply testimony, placed on the witness stand two members of the State Constabulary who were active in this investigation, and Dr. Ellison M. Smith, Director of Teacher Education and Certification in the State Department of Education, and who was also active in the investigation of the fraud which certain teachers undertook to perpetrate, was recalled to the witness stand, and over the objection of the appellant's counsel, these witnesses were permitted to testify that Marshall had never mentioned the name "Lead-

better" to them. Such testimony was in nowise contradictory of the appellant's testimony, nor was it in reply to any testimony offered by the appellant. The issue wasn't whether Marshall had told the Constabulary that he had procured the answers from a man named "Leadbetter," but it was whether Marshall had told the appellant that that was what he had told the Constabulary. The only person who could have denied the statement as to what Marshall told the appellant was Marshall himself, and although he was in the courtroom, he was not recalled to the witness stand.

Number I of appellant's statement of the "Questions Involved" is incomplete, but it is not necessary that we now pass upon the issue which was intended to be raised thereby, since in all probability the same situation will not arise in another trial. Nor is it now necessary that we decide the issue raised by Number V of the appellant's statement of the "Questions Involved." Such issue may not come before the Court in another trial.

The witness, Marshall, referred to throughout herein is Samuel Marshall or S. B. Marshall. He was not the only witness by the name of Marshall who testified for the prosecution.

For the reasons hereinabove stated, the judgment appealed from is reversed and the case remanded.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.

OXNER, Justice.

I concur in the opinion of the Chief Justice but desire to add the following:

Where it is shown that a witness has made inconsistent statements, it is proper to permit the witness to explain such inconsistency by relating whatever circumstances would naturally remove it. Wigmore on Evidence, Third Edition, Volume 3, Section 1044; 70 C. J., Witnesses, Section 1031. Under this well established rule, the witness Samuel Marshall could explain why he made the inconsistent affidavits and if necessary to a full explanation, could go into the con-

versation he had with Bellinger. To a limited extent, at least, he was allowed to do so. But the Court erred in going further and permitting the State to bolster this explanation by the testimony of Bellinger. Wigmore on Evidence, Third Edition, Volume 3, Section 1046.